IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 JUL 13 PM 3:04

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

|  |  |  |
|---|---|---|
| ABDISITAR JAMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2965 Ma/P |
| | ) | |
| CITY OF MEMPHIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This case arises from Plaintiff's arrest by Memphis police officers. Plaintiff brings suit under 42 U.S.C. § 1983, the Tennessee Governmental Tort Liability Act ("TGTLA"), T.C.A. § 29-20-101, et seq., and Tennessee common law. Before the court are two pending motions. Defendant City of Memphis ("the City") filed a motion for summary judgment on April 1, 2005, and the four Defendant police officers (the "individual officers"), sued in their individual and official capacities, filed a separate motion for summary judgment on the same day. Plaintiff responded to each of those motions on May 4, 2005. The individual officers filed a reply on May 16, 2005, and the City filed a reply on May 24, 2005. For the following reasons, the City's motion is GRANTED in part and DENIED in part, and the individual officers' motion is GRANTED in part and DENIED in part.

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 7-13-05

76

## I. Background

The complaint alleges the following facts. In the early morning hours of January 5, 2003, Jama was in his apartment with Shakib Hassan. (Compl. at ¶ 21.) When Jama's roommate, Ali Hayle, arrived at the apartment, an argument began between Jama and Hayle. (Id. at ¶¶ 22-23.) Officer Maverick Gibbs had been dispatched to the apartment building in response to an unrelated incident. (Id. at ¶ 24.) Hayle encountered Officer Gibbs in the hall and asked Gibbs to accompany him back to his apartment. (Id. at ¶ 25.) Gibbs followed Hayle to the apartment and asked that Jama and Hassan be quiet. (Id. at ¶ 26.) Gibbs then left the apartment. (Id. at ¶ 27.) He returned a short time later, at which point Gibbs and Jama began to fight. (Id. at ¶¶ 27-28.)

During the course of the fight, Officers Cathy Beacham and Julius Beasley arrived on the scene. (Id. at ¶ 36.) Before the fight ended, Gibbs had struck and kicked Jama, causing his eye, nose, mouth and cheek to bruise and/or bleed, sprayed Jama with mace, and kicked Jama, causing him to land headfirst on the floor. (Id. at ¶¶ 30-34.) Gibbs eventually handcuffed Jama and placed him under arrest. (Id. at ¶¶ 35, 39.) After restraining Jama, Gibbs continued to assault him. (Id. at ¶¶ 37-38.) Gibbs and Beacham lifted Jama from the floor and, because Jama was having difficulty walking, Gibbs assisted him from the apartment. (Id. at ¶¶ 40-41.)

When Gibbs and Jama reached the stairs leading to the parking

2

lot, Gibbs released Jama, allowing him to fall down the stairs. (Id. at ¶ 42.) Shortly after the fall, Lieutenant Frank Bell arrived at the scene, picked Jama up and placed him in Gibbs's vehicle. (Id. at ¶ 45.) Bell did not seek to assist Jama further despite his obvious injuries, and Gibbs did not inform Bell of the preceding events. (Id. at ¶¶ 44-46.) After approximately ninety minutes, while still in handcuffs, Jama was taken to the Regional Medical Center at Memphis ("the Med"). (Id. at ¶¶ 47-50.) Four hours after arriving at the Med, Jama was removed from the police holding area for a CAT scan. (Id. at ¶¶ 50-51.) Six hours after his arrival, Jama's handcuffs were removed for the first time so that surgery could be performed.[1] (Id. at ¶¶ 50, 52.) Jama's vital signs did not stabilize until approximately seven days later on January 12, 2003. (Id. at ¶ 54.)

## II. Jurisdiction

Plaintiff brings suit under § 1983 for violations of his Fourth and Fourteenth Amendment rights. This court, therefore, has jurisdiction under 28 U.S.C. § 1331. The court has jurisdiction over pendant state claims under 28 U.S.C. § 1367.

## III. Legal Standard

The party moving for summary judgment "bears the burden of

---

[1] The complaint is unclear as to Jama's injuries, stating that he was taken to surgery "as a result of blunt trauma, or bleeding, to the head." (Compl. at ¶ 52.) The complaint seems to confuse the cause of the injury, blunt force trauma, with the injury itself, bleeding.

3

clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such

evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

### IV. The City's Motion for Summary Judgment

In a prior order entered August 16, 2004, the court dismissed all of Plaintiff's claims against the City except those arising under the Tennessee Governmental Tort Liability Act ("TGTLA").

"Local governmental entities are immune from suit except when the General Assembly has, by statute, explicitly permitted them to be sued." Brown v. Hamilton County, 126 S.W.3d 43, 46 (Tenn. Ct. App. 2003) (citing Fretwell v. Chaffin, 652 S.W.2d 755, 756 (Tenn. 1983)). The TGTLA waives governmental immunity from suit for injuries resulting from tortious acts, subject to certain enumerated exceptions. Limbaugh v. Coffee Medical Center, 59 S.W.3d 73, 78 (Tenn. 2001). The TGTLA provides in part that:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
>
> (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of rights of privacy, or civil rights …

T.C.A. § 29-20-205. The Tennessee Supreme Court has interpreted

5

this provision to "expressly waive immunity for injuries proximately caused by a negligent act or omission of a governmental employee." Limbaugh, 59 S.W.3d at 78.

The City argues that Plaintiff's claims of officer negligence arise from his allegedly unconstitutional arrest and, therefore, fall under the civil rights exception to the TGTLA. The City also contends that Plaintiff has failed to offer evidence establishing that the actions alleged caused his injuries. The City claims further that the alleged actions of the individual officers are normally associated with intentional torts and that Plaintiff has no proof of the City's independent negligence. Finally, the City argues that any alleged failure to train or supervise its police officers constitutes a discretionary function for which the City is immune from suit.

### A. "Civil Rights" Exception

The TGTLA provides that immunity from suit of all governmental entities is removed or waived for any injury proximately caused by a negligent act or omission of any governmental employee within the scope of his employment unless the injury arises from a "civil rights" violation. Tenn. Code Ann. § 29-20-205(2); Hale v. Randolph, 2004 WL 185179, at *17 (E.D. Tenn. 2004). "It is fair and reasonable to interpret the plain language of § 29-20-205(2) as meaning that civil rights claims are a type of intentional tort." Hale, 2004 WL 185179, at * 17 (citing Brooks v. Sevier County, 279

6

F. Supp. 2d 954, 958 (E.D. Tenn. 2003); see also Daniels v. Williams, 474 U.S. 327 (1986)(holding that Due Process Clause does not generally apply to negligent conduct by a government official); Zinermon v. Burch, 494 U.S 113, 128 n.14 (1990)("a negligent act by a state official does not give rise to § 1983 liability").

In its prior order on motions to dismiss, the court found that Plaintiff had stated a claim under the TGTLA because he had pleaded that intentional or, in the alternative, negligent acts caused his injuries. To the extent that it may have been unclear in the prior order, the City is not vicariously liable under the TGTLA for intentional torts committed by the individual officers, and all such claims are DISMISSED.[2] The remaining claims are based on the alleged negligent acts of the individual officers. Therefore, those claims do not fall under the civil rights exception to the TGTLA.

### B. Causation

The City argues that, even if the TGTLA has waived the City's sovereign immunity as to claims arising from the negligence of the individual officers, Plaintiff has failed to offer sufficient evidence to create a genuine issue of material fact. Specifically, the City contends that Plaintiff has failed to offer evidence that any negligent acts of the individual officers caused Plaintiff's

---

[2] It is possible that a direct claim of negligence against the City would fall under a civil rights exception to the TGTLA. See Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). For reasons addressed below, that claim fails on other grounds.

7

injuries. Plaintiff claims that there is a genuine factual dispute and that the issue of causation should go to a jury.

It is undisputed that, after Plaintiff had been handcuffed, maced,[3] and placed under arrest, he fell while walking down the stairs from his walk-up apartment building. Professor Ken Barnes, a former police officer and expert witness for the Plaintiff, gave the following testimony at his deposition:

> Q. Okay. So we've just discussed that the officers had a duty to protect Mr. Jama. How did they breach that duty when Mr. Jama fell down the stairs?
> A. They had to maintain contact and control, as they have stated in their reports in several places that he was ... injured that[,] that he had been drinking and he had been ... maced. ... And if he was drunk and had been beaten or injured in a struggle and he had been sprayed with mace or OC spray, his vision and acuity would be greatly reduced, and he would need to be protected, held onto when moved, otherwise he would fall, and, with no way to defend himself or brace himself with his hands, he would suffer greater injuries.

(Barnes Depo. 74-76.) Further, Dr. Daniel Kueter, who performed brain surgery on Plaintiff after he was admitted to the hospital, has testified that the cause of Plaintiff's injury was a blunt force trauma to the head, which could have been caused by a fall. (Kueter Depo. 19:5-10.) Causation is generally an issue for the jury, and the foregoing evidence is sufficient to create a genuine factual dispute about whether the individual officers' actions in escorting Plaintiff down the stairs and/or delaying Plaintiff's

---

[3] It is unclear whether the substance sprayed on Plaintiff was mace, pepper spray, or some other burning agent. The distinction is immaterial for purposes of this motion.

medical treatment after his fall were the proximate cause of his injuries.

### C. The City's Negligence

In addition to its provision for vicarious liability for the negligent acts of municipal employees, the TGTLA allows a plaintiff to bring a claim directly against a city where the city fails to exercise reasonable care to protect the plaintiff from the foreseeable risk of assault and battery by a city employee. See Limbaugh v. Coffee Medical Center, 59 S.W.3d 73, 76 (Tenn. 2001)(finding that assault and battery are not within the list of intentional torts excepted from the TGTLA). Plaintiff brings a claim for common law assault and battery against the individual officers and contends that the City was negligent in allowing the alleged torts to be committed. Plaintiff has not, however, identified any municipal practice or policy deemed to be negligent or introduced any evidence or argument that the City was negligent in allowing the individual officers to commit the wrongful acts alleged of them.[4] Consequently, his claim for direct negligence against the City must be DISMISSED. See Hale, 2004 WL 1854179, at * 16 (dismissing claim for municipal liability where plaintiff

---

[4] The City introduces evidence of officer training on conflict resolution, use of force, and proper arrest procedures, which all of the individual officers have received. The City provides further evidence of its policies prohibiting the use of excessive force and states that the individual officers had never been disciplined for the kind of conduct Plaintiff alleges. For purposes of this motion, Plaintiff does not dispute any of this evidence.

9

offered no proof of independent act of negligence); see also Order on Motions to Dismiss at 5-7 (finding that Plaintiff had failed to state a claim for municipal liability under § 1983).

### D. Discretionary Function Exception

The City asserts that, "to the extent Plaintiff alleges that the City is liable for any discretionary functions, such as decisions regarding its hiring practices or the type or amount of training it provides to MPD officers, the City is immune from liability pursuant to Tenn. Code Ann. § 29-20-205(1)." As noted above, Plaintiff has not identified any municipal practice or policy that would give rise to direct liability. The City does not appear to argue that any decision or action by an individual officer constitutes the performance of a discretionary function. Thus, the City's argument based on the discretionary function exception is moot.

### V. The Individual Officers' Motion for Summary Judgment

Plaintiff claims that the individual officers violated his Fourth Amendment rights by arresting him without probable cause and by seizing him with excessive force.[5] He brings further claims under Tennessee common law for assault and battery. In his response to the individual officers' motion for summary judgment, Plaintiff "concedes that the case against Defendant Beasley and

---

[5] Plaintiff originally brought additional claims which were dismissed by prior order of the court. See Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, August 16, 2004.

10

Defendant Bell is not as strong as the claims against the remaining officers and [is] willing to dismiss his case with respect to them only." (Resp. at 17.) Thus, the court will DISMISS Plaintiff's claims against Defendants Beasley and Bell and analyze the case remaining against Defendants Beacham and Gibbs.

### A. Probable Cause

Plaintiff claims that he was seized by the individual officers without probable cause, in violation of the Fourth Amendment to the United States Constitution. The individual officers submit evidence demonstrating that their arrest of Plaintiff was reasonable and that Plaintiff later entered a plea of nolo contendere to one of the charges for which he was arrested. Plaintiff did not respond with argument or evidence showing that he was arrested without probable cause. A resulting conviction is a complete defense to a subsequent civil rights action asserting that an arrest was made without probable cause and provides a sound basis for a claim of qualified immunity. Walker v. Schaeffer, 854 F.2d 138, 143 (6th Cir. 1988)(finding that plaintiff who had pled nolo contendere to underlying offense was estopped from asserting that police officers had arrested him without probable cause). Thus, Plaintiff's claim that the defendant officers arrested him without probable cause is DISMISSED.

### B. Excessive Force

The individual officers argue that Plaintiff has not raised a

11

genuine issue of material fact as to his excessive force claim and that they are entitled to the defense of qualified immunity. "Qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)). The threshold inquiry in a qualified immunity analysis is whether the facts, viewed in the light most favorable to Plaintiff, establish a constitutional violation. Id. at 736; Katz, 533 U.S. at 200-02. If the court finds a constitutional violation, it must consider whether the defendant's actions violated "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Competent public officials are expected to know the law governing their conduct, including binding precedent from the courts in the jurisdiction in which they operate. See Williams v. Kentucky, 24 F.3d 1526, 1532-33 (6th Cir. 1994).

Plaintiff offers the following excerpt from his deposition testimony:

> Q. When you were down on your chest, was he [Gibbs][6] attempting to handcuff you?
> A. He was handcuffing me when I was down on the chest, when I fell down, and he was handcuffing me, and after

---

[6] Plaintiff does not dispute the City's characterization of his deposition testimony as "Gibbs continued to punch Plaintiff after he had been restrained." (Pl. Resp. at 3.)  Further, the only other officer Plaintiff maintains claims against is Cathy Beacham, who is a woman. Thus, Plaintiff's use of the pronoun "he" indicates that he is referring to Gibbs.

12

> maybe handcuffed maybe a few minutes, same time he handcuffed me, he started punching me.
> Q. So you are saying that the officer hit you after you were handcuffed?
> A. Yes, sir.
> Q. And he hit you where?
> A. Same side [left side of the head, as described earlier].
> Q. With what?
> A. With fist.

(Jama Depo. 96:10-23.) Assaulting an arrestee who has already been handcuffed violates clearly established constitutional rights. See, e.g., Phelps v. Coy, 286 F.3d 295, 302 (6th Cir. 2002); Polk v. Hopkins, 129 Fed. Appx. 285, 290-91 (6th Cir. 2005)(citing McDowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir. 1988). Thus, Plaintiff has offered sufficient evidence to overcome a defense of qualified immunity and survive summary judgment on his excessive force claim against Officer Gibbs.

Plaintiff does not, however, offer evidence demonstrating that Officer Beacham used excessive force against him in violation of clearly established constitutional rights. Read in the light most favorable to Plaintiff, the evidence indicates that Beacham, after a violent struggle between Gibbs and Plaintiff in which Plaintiff resisted arrest, placed her foot on Plaintiff's neck as he was lying on his stomach "in the process of ... being handcuffed." (Jama Depo. 126:12-19.) This conduct does not constitute excessive force in clear violation of the Fourth Amendment. See Wagner v. Bay City, 227 F.3d 316, 324 (5th Cir. 2004)(where officers' actions, including placing a foot on arrestee's back, "were consistent with

13

the idea that they were merely trying to restrain a violent individual"); Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 594 (7th Cir. 1997).[7] Thus, Plaintiff's claim against Officer Beacham for unconstitutionally excessive force must also be DISMISSED.

### C. State Claims

Plaintiff brings claims of assault and battery against the individual officers under Tennessee common law.[8] See, e.g., Hale v. Randolph, 2004 WL 1854179, at *12 (E.D. Tenn. 2004)(finding that plaintiff who brought § 1983 and TGTLA claims could also bring assault and battery claims against individual police officers). The individual officers contend that there is no genuine issue of material fact as to Plaintiff's state claims for assault and battery. "An assault is an attempt, or the unequivocal appearance of an attempt, to do a corporal injury to another, the intent to do

---

[7] The Sixth Circuit has held that it is "clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down or prone position after being subdued and/or incapacitated constitutes excessive force." Champion v. Outlook Nashville, Inc., 380 F.3d 893, 903 n.2 (6th Cir. 2004). Here, the Plaintiff's claimed damages result from head trauma, and there is no other evidence that the pressure Beacham applied to Plaintiff's neck was substantial or significant. Further, Plaintiff's evidence does not demonstrate that he had already been subdued and/or incapacitated when Beacham placed her foot on his neck.

[8] Tenn. Code Ann. § 29-20-310(b) provides that "[n]o claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter...." Although a municipality may be held liable for its own negligence in allowing an employee to commit assault and battery, it has not been established that a municipality may be held vicariously liable when those torts are committed by its employees. See Limbaugh v. Coffee Medical Center, 59 S.W.3d 73 (Tenn. 2001). Thus, courts have held that the TGTLA has not removed immunity in those cases. See Hale, 2004 WL 1854179, at *12.

14

harm being essential." Alexander v. Beale Street Blues Co., Inc., 108 F. Supp. 2d 934, 945-46 (W.D. Tenn. 1999)(quoting Rushing v. State, 268 S.W.2d 563, 567 (Tenn. 1954)). "A battery is any unlawful beating, or other physical violence or constraint, inflicted on a human being without his consent." Id. at 946 (quoting Rushing, 268 S.W.2d at 567).

As with his excessive force claim, Plaintiff's deposition testimony that he was assaulted by Officer Gibbs after being handcuffed constitutes sufficient evidence to establish a genuine issue of material fact as to the claim for assault and battery. See Whitney v. Pfeifer, 755 F.2d 93 (Table), 1985 WL 12831, at *1 (6th Cir. 1985)(holding that, if there is any difference between the two, a § 1983 excessive force claim "imposes a standard of liability more difficult for a plaintiff to meet than the assault and battery charge"). Thus, the individual defendants' motion for summary judgment on Plaintiff's claim against Officer Gibbs must also be denied.

Plaintiff has not, however, offered sufficient evidence that Officer Beacham assaulted or battered him. As discussed above, Plaintiff has not offered evidence showing that Beacham intended to harm him or that her physical touch of Plaintiff was so far beyond the scope of reasonable police practice as to be "unlawful." See City of Mason v. Banks, 581 S.W.2d 621, 626 (Tenn. 1979)(finding that defendant police officer was liable for battery only to the

15

extent that force used was "excessive and unprivileged").

## VI. Official Capacity Suits

Although the individual officers have not moved for dismissal of the official-capacity suits against them, the court notes that such actions "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n. 55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-166 (1985). The individual officers are employed by the City, which is also a defendant in this action. Thus, the official-capacity claims against the individual officers are redundant, and the court DISMISSES them.

## VII. Conclusion

For the foregoing reasons, the City's motion for summary judgment is GRANTED in part and DENIED in part, and the individual officers' motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's TGTLA claim of direct negligence against the City is DISMISSED. Plaintiff's § 1983 claim that he was arrested without probable cause is DISMISSED. All § 1983 and common law assault and battery claims against Officers Beasley, Bell, and Beacham in their individual capacities are DISMISSED. All claims

16

against the individual officers in their official capacities are DISMISSED. Defendants' motions for summary judgment on all other claims are DENIED. The case will proceed to trial on Plaintiff's TGTLA claims against the City for the alleged negligent acts of the individual officers and Plaintiff's claims against Officer Gibbs for unconstitutionally excessive force and common law assault and battery.

So ORDERED this 13th day of July 2005.

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

17

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 76 in case 2:03-CV-02965 was distributed by fax, mail, or direct printing on July 13, 2005 to the parties listed.

---

Robert D. Meyers
KIESEWETTER WISE KAPLAN & PRATHER, PLC
3725 Champion Hills Drive
Ste. 3000
Memphis, TN 38125

Mary Elizabeth McKinney
GODWIN MORRIS LAURENZI & BLOOMFIELD, P.C.
50 N. Front St.
Ste. 800
Memphis, TN 38103

Amber Isom-Thompson
KIESEWETTER WISE KAPLAN SCHWIMMER & PRATHER, PLC
3725 Champion Hills Drive
Ste. 3000
Memphis, TN 38125

Deborah A. Godwin
GODWIN MORRIS LAURENZI & BLOOMFIELD, P.C.
50 N. Front St.
Ste. 800
Memphis, TN 38103

Danese K. Banks
COCHRAN CHERRY GIVENS SMITH & BOLTON
One Commerce Square
Ste. 2600
Memphis, TN 38103

Honorable Samuel Mays
US DISTRICT COURT